## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>VYERA PHARMACEUTICALS, LLC, *et al.*,[1]<br><br>              Debtors. | Chapter 11, Subchapter V<br><br>Case No. 23-10605 (JKS)<br><br>(Jointly Administered) |
| PHOENIXUS AG,<br><br>              Plaintiff,<br><br>    v.<br><br>AKKADIAN PARTNERS FUND;<br>AKKADIAN PARTNERS FUND –<br>COMPARTMENT PHOENIXUS<br>INVESTMENT; HARLEY LIPPMAN;<br>OPALEYE LP; ANDREW PIZZO;<br>WORMWOOD CAPITAL LLC; RON<br>TILLES; ANTOINE VERGLAS;<br>THORNEY OMEGA PTY LTD; and<br>SABINE GRITTI.<br><br>              Defendants. | Adversary Pro. No. 23-_____ (JKS) |

## COMPLAINT FOR INJUNCTIVE RELIEF

Phoenixus AG ("**Phoenixus**") and its affiliated debtors and debtors in possession in the above-captioned subchapter V cases (collectively, the "**Debtors**"), file this Complaint for Injunctive Relief (this "**Complaint**") and respectfully allege as follows:

---

[1]       The Debtors in these subchapter V cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are as follows: Vyera Pharmaceuticals, LLC (1758); Oakrum Pharma, LLC (3999); SevenScore Pharmaceuticals, LLC (2598); Phoenixus AG (1091); Dermelix Biotherapeutics, LLC (4711); and Orpha Labs AG. The Debtors' headquarters and the mailing address for the Debtors is 600 3rd Avenue, 19th Floor, New York, NY 10016.

## INTRODUCTION

1. Phoenixus, and its Debtor subsidiaries, commenced these cases to maximize the value of their assets for the benefit of their stakeholders. The path to that, as determined by Phoenixus's independent board of directors (the "**Board**"), was to propose the *Joint Subchapter V Plan of Reorganization and Liquidation* [D.I. 11] (the "**Plan**"), which, among other things, establishes a liquidating trust to hold the Debtors' assets, including the receipt of proceeds from the sale of a priority review voucher ("**PRV**") that Debtor Orpha Labs AG expects to receive if it successfully develops the drug ORL-101. The liquidating trust will be obligated to distribute proceeds from the sale of the PRV to the Debtors' creditors and to pay any excess proceeds to Phoenixus for distribution to its shareholders in accordance with Swiss law. Absent the development of ORL-101 and the grant and sale of a priority review voucher, Phoenixus shareholders will be "out of the money" and will receive no recovery or distribution in these cases. The Plan proposes to use $7.8 million in estate funds to develop ORL-101 over a three-year period.

2. The Debtors' revenue is derived from sales of pharmaceutical products in the United States and, apart from an office lease in Zurich and other de minimis assets, the Debtors' significant assets, including the potential rights to the PRV, are in the United States. Similarly, the Debtors' creditors are located primarily in the United States and hold claims that, predominantly, were incurred in the United States.

3. A minority group of shareholders, Harley Lippman, Opaleye LP, Andrew Pizzo, Wormwood Capital LLC ("**Wormwood**"), Antoine Verglas, Thorney Omega Pty Ltd, and Sabine Gritti (collectively, the "**Requesting Shareholders**"), apparently oppose the confirmation of the Plan. Instead, the Requested Shareholders proposed a Recapitalization Plan (defined below)— which they withdrew on June 2, 2023—in which they would have invested between $1,000,000

2

and $1,500,000 to buy newly issued preference shares A, which would have had them owning on a pro forma basis over 68% of all shares and over 75% of the preference shares A. More important, the Recapitalization Plan did not address how the Debtors' liabilities—which very likely exceed the estates' available cash plus the additional cash proposed to be contributed under the Recapitalization Plan—would be paid or otherwise satisfied.

4.      Additionally, the Requesting Shareholders propose to elect four new directors (the "**Proposed New Directors**") to the Phoenixus Board: Guy-Charles Fanneau De La Horie, Ross Maclean, Mathieu Bigois, and Jean-Luc Elhoueiss, two of whom, Messrs. Maclean and Bigois, are affiliated with Akkadian Partners Fund ("**Akkadian**"). All the proposed directors reside outside of the United States and, accordingly, may be beyond the effective jurisdiction of this Court to enforce compliance with the provisions of the Bankruptcy Code and other applicable law.

5.      Swiss law allows the Requesting Shareholders to request an extraordinary meeting of shareholders. When they make such a request, Swiss law would require Phoenixus's Board to schedule a meeting. If the Board does not schedule a meeting, the Requesting Shareholders could potentially seek to compel a meeting through a Swiss legal proceeding, subject, now, of course, to the automatic stay under section 362 of the Bankruptcy Code.

6.      The Board scheduled a shareholders' meeting for June 2, 2023, and, in a May 12, 2023 invitation, stated the reasons why the Board did not support the two agenda items put forth by the Requesting Shareholders.

7.      On June 2, 2023, the Phoenixus Board issued an invitation for an Extraordinary Meeting of Shareholders. Since then, the court-appointed Receiver (defined below) for Phoenixus's largest shareholder, Martin Shkreli, sought permission to sell his stock in Phoenixus (the "**Shkreli Shares**") to Akkadian. That sale (the "**Stock Sale**") is conditioned, on among other

things, the election of the Proposed New Directors to create a new board majority to then seek dismissal or withdrawal of these subchapter V cases without any protection provided to creditors or other parties in interest. The Shkreli Shares represent 34.31% of Phoenixus voting units and the Receiver, standing in the shoes of Mr. Shkreli, potentially also has another approximately 9% in proxies, meaning the Receiver may have 43.13% of the voting units of Phoenixus.

8.       On May 25, 2023, once the Board received notice of the Stock Sale, and the conditions to effectiveness thereof, it became clear that Akkadian and Requesting Shareholders intend to take over Phoenixus and dismiss these subchapter V cases to avoid this Court's oversight and consequent protection of the interests of all stakeholders. The reason behind this strategy is unclear—Akkadian has never indicated how it would address creditor claims or fund the development and monetization of ORL-101, which is the only path to pay unsecured creditors in full and provide a recovery to equity.

9.       Phoenixus files this adversary proceeding to prevent harm to the Debtors' creditors and to ensure this Court (i) has a say in whether the Board will change, (ii) will retain effective oversight over management of the Debtors' affairs, and (iii) has a say as to whether these subchapter V cases will be dismissed.

## JURISDICTION AND VENUE

10.       This Court has jurisdiction over these subchapter V cases, the Debtors, property of the Debtors' estates, and this matter under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

11.       This is a core proceeding under 28 U.S.C. § 157(b)(2).

12.       Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

13.     As required by Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to entry of a final order by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments sought in this Complaint consistent with Article III of the United States Constitution.

14.     The statutory bases for the relief requested in this Complaint are sections 105(a) and 362(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 7001-1.

## PARTIES

15.     Akkadian Partners SA is a joint-stock company incorporated in Luxembourg, which is the management company of Akkadian Partners Fund – Compartment Phoenixus Investment, a registered Luxembourg registered securitization fund (collectively, "**Akkadian**"), believed to have a registered address of 18 rue Robert Stümper, Luxembourg.

16.     Harley Lippman is an individual who owns 133,333 preference shares A of Phoenixus and who resides or has an office at 334 Jefferson Ave., Miami, Florida 33139.

17.     Opaleye LP is a Delaware limited partnership investment fund that owns 85,187 preference shares A of Phoenixus, and with offices at One Boston Place, Boston, Massachusetts 02108. Opaleye LP's registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

18.     Andrew Pizzo is an individual who owns 66,666 preference shares A of Phoenixus and who resides or has offices at 1370 Broadway, 16th Floor, New York, NY 10018.

19.     Wormwood Capital LLC is a Delaware limited liability company that owns 353,721 preference shares A of Phoenixus and that has offices at 1246 NE Oceanview Circle,

Jensen Beach, Florida 34957. Wormwood Capital's registered agent is A Registered Agent, Inc., 8 the Green, Suite A, Dover, Delaware 19901. Wormwood is the largest shareholder of the Requesting Shareholders, owning about 40% of all the Requesting Shareholders preference shares A.

20.     On information and belief, Wormwood is controlled by defendant Ron Tilles; Tilles is listed as a contact of Wormwood in the share register.  Tilles is a long-standing business partner of Shkreli brought to Vyera from Retrophin to import its anticompetitive blueprint into Vyera. Tilles was named CEO and later fired for cause due to, among other wrongful acts, the submission of hundreds of thousands of dollars in fraudulent business expenses relating to his personal wine collection.  An arbitrator subsequently ordered Tilles to repay Vyera over $200,000 for these fraudulent business expenses and upheld his termination for cause.

21.     Antoine Verglas is an individual who owns 40,000 preference shares A of Phoenixus and who resides or has offices at 130 West 3d St., 4N, New York, New York 10012.

22.     Thorney Omega Pty Ltd. Is a registered Australian proprietary company that owns 166,667 preference shares A of Phoenixus.  Thorney Omega Pty Ltd. Has offices at Level 39, 55 Collins St., Melbourne, Victoria 3000.

23.     Sabine Gritti is an individual who owns 41,377 of preference shares A of Phoenixus and who resides or has offices at 4 Place de Vandoeuvres 1253 Vandoeuvrres Switzerland.

## BACKGROUND

**A.      Phoenixus' s background: formation and equity capital structure.**

24.     In October 2014, Martin Shkreli founded Turing Pharmaceuticals LLC ("**Turing**"), a privately held pharmaceutical company with its principal place of business in New York.

Mr. Shkreli also founded Turing Pharmaceuticals AG ("**Turing AG**"), Turing's parent company, based in Switzerland.

25.     Mr. Shkreli was CEO of Turing until his arrest on December 18, 2015 for securities fraud related to his prior business ventures. He served as chair of the Board of Turing AG until January 20, 2016. He resigned from the Board entirely on February 10, 2016. After Mr. Shkreli departed, Turing was renamed Vyera Pharmaceuticals, LLC ("**Vyera**"), and Turing AG was renamed Phoenixus to distance the companies from Mr. Shkreli in the public mind. Mr. Shkreli remained the largest shareholder, however, and continued to control Phoenixus and its subsidiaries and to direct their strategy.

26.     Under the June 7, 2019 Articles of Incorporation for Phoenixus, the Phoenixus's share capital is stated as being divided into 2,013,336 ordinary shares and 5,115,175 preference shares A.

27.     The Articles of Incorporation also authorized a maximum of 2,686,664 more ordinary shares for issuance to employees, persons in comparable positions, members of the Phoenixus Board, or the board of a related company.  The Articles of Incorporation also provide for the issuance of up to 865,103 fully paid-in preference shares A, for conversion of a loan made to enable the purchase of Daraprim, one of the Debtors' primary pharmaceutical products.

28.     As of the Petition Date, there are 8,287,562 shares of Phoenixus issued, of which 6,563,818 shares are outstanding, 564,693 are treasury shares, and 1,204,051 are for warrants/options/restricted shares. Of the outstanding shares, approximately (i) 1,960,984 are ordinary shares; and (ii) 4,557,834 are preference shares A.

29.     The Debtors issued the preference shares A in 2015 as part of a $75 million equity raise.  The preference shares A have a liquidation preference of $15 per share.

30.     The Requesting Shareholders collectively own 886,951 preference shares A and, together, hold 13.51 % of the voting rights of Phoenixus.

31.     The Receiver contends that he has a total of 2,251,923 share units and has the right to vote by proxy another 579,338 units.[2] According to the Debtors' share register, the Shkreli Shares consist of 1,275,257 in preference shares A and 976,666 in ordinary shares, for 34.31% voting control based on the ownership of these shares.  It is unclear if the Receiver seeks to sell the units for which Mr. Shkreli has the right to vote by proxy, which takes his voting control of Phoenixus to 43.13% of all Phoenixus shares.  The Debtors reserve their rights with respect to any transfer of those proxies.

32.     On July 23, 2015, Phoenixus's predecessor, Turing AG, entered into a Preferred Shareholders' Agreement with Mr. Shkreli and each of the purchasers of preference shares A (the "**Preferred Shareholders' Agreement**").  The Requesting Shareholders are each signatories to the Preferred Shareholders' Agreement, as is Mr. Shkreli in his capacity as an owner of preference shares A.

33.     The Preferred Shareholders' Agreement only permits a transfer of the preference shares A if the selling shareholder gives written notice describing in reasonable detail the proposed sale, the number of shares to be sold, the consideration to be paid, the name and address of the buyer, and any other material terms.  *See* Prfd. Sharehldrs. Agmt., § 5.  The seller must provide

---

[2]     Upon information and belief, some or all of the following shareholders may have entered into proxy agreements with Martin Shkreli: Leonora Izerne, Chrisopher Lau, Kavin Mulleady, Peter Myall, Hass Patel, Nick Pelliccione, Ron Tilles, Michael Smith, Megan Roberts, Nancy Retzlaff, Keller Perry, Perspective Life Science Master Fund, Edwin Urrutia, Bench International, Catherine Chen, Patrick Crutcher, Howard Dorfman, Michael Harrison, and Tashdid Hasan.

this written notice to Phoenixus and the other shareholders party to the Preferred Shareholders' Agreement. *Id.*, § 6.1.

34.     Under the Preferred Shareholders' Agreement, within 15 days of delivery of the seller's written notice, Phoenixus has a right of first refusal to purchase some or all of the shares subject to the sale. *Id*., § 6.2(a). If Phoenixus does not exercise that right, then all the other preference A shareholders have the option, a "co-sale" right, exercisable for 20 days, to purchase the shares that Phoenixus does not buy. *Id*., § 6.2(b).

35.     If neither Phoenixus nor any of the other preference A shareholders exercise their rights, then each preference A shareholder has the option to participate in the sale by including in the proposed sale its own preference shares A, all on the same terms and conditions as the proposed sale. *Id*., § 7.2.

36.     As of May 9, 2023, on a consolidated basis, the Debtors had cash on hand of approximately $10.5 million, exclusive of retainers totaling approximately $2.6 million held by the Debtors' professionals and additional deposits held by certain of the Debtors' landlords and vendors.

### A.     Martin Shkreli's actions have had a negative impact on Phoenixus.

37.     In 2015, Vyera acquired the U.S. licensing rights to Daraprim from, then-owner, Impax Laboratories for $55 million. At the time of Vyera's acquisition, Daraprim had a list price of $17.60 per tablet.

38.     After purchasing the rights to Daraprim, then-CEO Shkreli raised the price of the drug from $17.60 to $750.00 per tablet, effective August 11, 2015. From 2016 to 2019, it was estimated that the average net price of Daraprim ranged between $228.00 and $305.00 per tablet (price per tablet after subtracting discounts, chargebacks, and rebates).

39.     Vyera faced swift backlash from health care providers, patients, medical societies, the public, and Congress.

40.     On December 18, 2015, Shkreli was arrested and charged with securities fraud in connection with prior dealings unrelated to the Debtors.  In August 2017, following a six-week trial, a federal jury convicted Shkreli of two counts of securities fraud and one count of securities fraud conspiracy.

41.     Shkreli served as the chair of the Board of Phoenixus until January 20, 2016, resigning on February 10, 2016.  Although Shkreli's incarceration began in September 2017, he remained Phoenixus's largest shareholder, and he continued to attempt to direct the Debtors' business from prison—Shkreli obtained a contraband cell phone and was found to have used it to communicate with certain directors of the Debtors.  These directors are no longer members of, or associated with, the current Board.

42.     On January 27, 2020, the Federal Trade Commission (the "**FTC**") and a number of state attorneys general sued Shkreli, then CEO Kevin Mulleady, Vyera, and Phoenixus in the United States District Court for the Southern District of New York for civil violations of federal and state antitrust laws.  *See FTC v. Vyera Pharmaceuticals, LLC* (S.D.N.Y. No. 20-cv-00706-DLC) (the "**FTC Litigation**").  A class action comprised of affected purchasers joined the lawsuit.  Soon after the commencement of the FTC Litigation, the Debtors appointed a new board and installed new management, which then took steps to eliminate Shkreli's influence.

43.     On December 7, 2021, on the eve of trial, Vyera, Phoenixus, and Mulleady settled with the FTC and the States under the terms of a consent order (the "**FTC Consent Order**"). The FTC Consent Order required (i) Mulleady to pay a fine of $250,000, subject to certain exceptions, (ii) Vyera to pay $10 million into a settlement fund in January 2022, and (iii) contingent payments

of up to $30 million to be paid upon the monetization of any assets of Phoenixus and Vyera within 5 to 10 years following the date of the FTC Consent Order (the "**Contingent FTC Payments**").

44.     Shkreli did not participate in the settlement of the FTC Litigation, so the FTC and Shkreli proceeded to a bench trial in December 2021.  On January 14, 2022, the court found Shkreli liable on all counts, enjoined him from the pharmaceutical industry for life, and ordered him to pay $64.6 million in disgorgement.  Shkreli has appealed this ruling, and that appeal is currently pending before the U.S. Court of Appeals for the Second Circuit.

45.     Shkreli's actions have caused serious reputational harm to the Debtors and have hampered the Debtors' ability to, among other things, open certain bank accounts, successfully commercialize new products, and either raise capital or consummate the sale of various Debtor assets.

  **B.**  **Dr. Thomas Koestler, a Shkreli creditor, registers an arbitration award against Mr. Shkreli, resulting in the appointment of a Receiver to collect and liquidate Mr. Shkreli's assets for his benefit.**

46.     On September 14, 2016, Thomas P. Koestler, Ph.D., filed a *Petition to Confirm an August 2, 2016 Final Award for Arbitration*, based on a consulting agreement between Dr. Koestler and Retrophin, Inc.  Dr. Koestler filed this petition in the United States District Court for the Southern District of New York (the "**District Court**"); the case is docketed as *Koestler v. Shkreli*, 1:16-cv-07175.

47.     On February 6, 2017, the District Court entered an order and judgment in favor of Dr. Koestler and against Shkreli in the amount of $2,614,930 (the "**Koestler Judgment**").

48.     On July 23, 2023, the District Court appointed Daniel R. Alonso, Esq., of New York to serve as a receiver; however, the parties were unable to settle an order regarding the

appointment of Mr. Alonso. Thus, on August 13, 2021, the Court ordered (the "**Receivership Order**") the appointment of Mr. Derek C. Abbot, Esq., as receiver (the "**Receiver**").

49.     That Receivership Order provides that "[t]he Receiver is appointed for a period of six months from the date of this Order, and the Judgment Creditor or the Receiver may apply for an extension of that period of time by letter application setting forth good reason for such extension." [Koestler D.I. 120].

50.     On February 8, 2022, the District Court extended the term of the Receiver's authority from February 16, 2022 to August 16, 2022. *See* Koestler D.I. 185.

51.     On August 11, 2022, the District Court extended the term of the Receiver's authority from August 16, 2022 to February 16, 2023. *See* Koestler D.I. 211.

52.     On February 7, 2023, the District Court further extended the term of the Receiver's authority from February 16, 2023 to August 16, 2023. *See* Koestler D.I. 230.

53.     On August 16, 2021, the District Court entered an order that, among other things, authorized the Receiver to collect the stock that Mr. Shkreli owned in Phoenixus and to sell that stock to satisfy the Koestler Judgement. Mr. Shkreli's ownership in the Phoenixus stock had previously been subject to a forfeiture proceeding in his criminal case; however, the United States Government was able to satisfy the forfeiture order through sale of replacement assets and advised the District Court that it no longer had any interest in the Shkreli Shares.

54.     The order authorizing the Receiver to take possession of and sell the Shkreli Shares provides that proceeds of the Shkreli Shares are be paid (i) first to pay any amounts owed to the Receiver as allowed by the District Court and (ii) next to pay the amount owed to Dr. Koestler, with interest and any other costs to which he may be entitled.

55.     On October 27, 2021, the District Court entered an order requiring Phoenixus to provide the Receiver and Dr. Koestler with, among other things, "all information in any way relevant to the nature and extent of the Judgement Debtor's interest in and to Phoenixus and as to all voting rights the Judgment Debtor has with respect to any stock or other securities or instruments of or related to Phoenixus, including the Phoenixus Stock." *See* Koestler D.I. 165-1.

56.     On March 8, 2022, Shkreli filed a letter request in the District Court asking for an appraisal of his Phoenixus Shares. *See* Koestler D.I. 192. The Receiver objected. *See* Koestler D.I. 194. The District Court denied Shkreli's request on the grounds that "the best valuation of the shares will occur through the process the Receiver is pursuing" and that Mr. "Shkreli will have an opportunity to be heard at the time there is an application to approve a sale." Koestler D.I. 196.

57.     On June 9, 2022, the Receiver sought entry of an order authorizing and requiring Mr. Shkreli to provide the Receiver with a proxy concerning his rights in the Phoenixus shares (including the right to vote) that he owns (2,251,923 shares) or with respect to which he otherwise allegedly enjoys the right to vote by a supposed agreement (an additional 579,338 shares, for a total of 2,831,261 shares) in anticipation of a June 24, 2022 shareholder meeting. The District Court granted this request, with modifications, authorizing the Receiver to act in place of Mr. Shkreli with respect to all the shares in Phoenixus he owns for the tenure of the term as Receiver. *See* Koestler D.I. 206.

58.     On September 28, 2022, the District Court entered an order granting an application, filed under seal, to supplement various receivership orders, which provided that the Receiver would become the legal owner of the Phoenixus shares subject to various conditions, such as (i) an agreement indemnifying the Receiver and (ii) that Shkreli would remain the beneficial owner of the Phoenixus shares for US tax purposes, and further authorizing Phoenixus to enter the

13

Receiver onto its share registry as the legal, not beneficial, owner of the Shkreli Shares.  *See* Koestler D.I. 220.

59.     Since his appointment, the Receiver has, upon information and belief, sold or is continuing to attempt to sell various of Shkreli-assets, including shares of Audioeye, Inc. and a Picasso etching.  There have also been efforts by Dr. Koestler to recover a tax refund due to Shkreli. The Receiver has also applied for and had payment of legal fees and costs approved.  The Debtors do not know the remaining outstanding amount of the judgment.

> **B.  After a new independent Board is appointed, Phoenixus pursues its options and decides to file these subchapter V cases.**

60.     On August 22, 2022, Thomas J. Allison, Derek Pitts, and Ivona Smith were appointed as the sole members of the Phoenixus Board.  Messrs. Allison and Pitts and Ms. Smith have no ties to prior management and are independent.  They also each have extensive fiduciary experience in guiding and managing companies experiencing financial distress.

61.     The Board subsequently hired outside restructuring professionals— SierraConstellation Partners, LLC, Alvarez and Marsal Securities, LLC ("**A&M**") and DLA Piper LLP (US)—to assist the Board in examining strategic alternatives to preserve and enhance value for all stakeholders.

62.     Following the conclusion of a robust strategic alternatives process conducted earlier this year, on May 9, 2023 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code to best preserve the Debtors' limited liquidity, fund the development of ORL-101 (the Debtor's most promising asset), and implement a transparent, court-supervised process to administer and pay claims of creditors and other stakeholders.

63.     Along with the petitions, the Debtors filed the Plan, which, among other things, seeks to consolidate the Debtors and estates for distribution purposes, establish a liquidating trust to consolidate estate funds and hold additional recoveries from the sale of assets and prosecution of estate causes of action, and provide $7.8 million in estate funds to execute a business plan to monetize ORL-101 which, if successful, could result in full payment of  creditor claims and provide a substantial distribution to shareholders of Phoenixus.  The Debtors are pursuing an expedited plan confirmation process to minimize administrative costs.

64.     The Debtors are continuing in possession of their respective properties and are continuing to operate and maintain their businesses as debtors in possession under section 1184 of the Bankruptcy Code.

65.     On May 10, 2023, the Office of the United States Trustee for Region 3 (the "**U.S. Trustee**") appointed David M. Klauder as the Subchapter V Trustee in these subchapter V cases.

66.     The Debtors each filed their respective schedules of assets and liabilities and their statements of financial affairs on June 5, 2023.

67.     The U.S. Trustee scheduled and held a meeting of creditors under section 341 of the Bankruptcy Code on June 6, 2023.

**C.    The Requesting Shareholders, led by Ron Tilles and Akkadian, pursue a strategy to dismiss these subchapter V cases.**

68.     Upon information and belief, Akkadian has been in communication with various shareholders about an effort to invest in or take over Phoenixus.

69.     As alleged above, upon information and belief, Wormwood, the largest of the Requesting Shareholders, is controlled and led by Ron Tilles and is a long-standing business partner of Mr. Shkreli brought to Vyera from Retrophin to import its anticompetitive blueprint into

15

Vyera.  Ron Tilles was named CEO of Vyera and later fired for cause for submitting over $200,000 in fraudulent business expenses while CEO.

70.    Since early January 2023, A&M has conducted a robust marketing and sale process for the Debtors' businesses and assets, which process remains ongoing.  During that process, Akkadian entered into a nondisclosure agreement with the Debtors and engaged in several discussions with the Debtors and A&M.  Akkadian's interest in a transaction ostensibly involved the acquisition of ORL-101. However, it became clear that Akkadian did not have the financial wherewithal to independently fund the development and monetization of ORL-101.

71.    After considerable diligence, Akkadian indicated on February 8, 2023, that it did not see an investment in ORL-101 as being worthwhile.  However, a few weeks later, Akkadian proposed to acquire ORL-101 for a nominal upfront payment and the sharing of sale proceeds if successful in developing the drug and procuring the issuance of a PRV.  Notwithstanding, Akkadian provided no concrete plan, much less a binding financial commitment, to fund the development of ORL-101.  Rather, Akkadian indicated it would seek financing from other sources down the road.  Akkadian indicated that, if Akkadian was not able to raise sufficient capital after 6-18 months, it would return ORL-101 to the Debtors (after the program would have been without funding and essentially dormant for that period).

72.    The Board never accepted this bid due to, among other things, its lack of a binding financial commitment and the failure to provide a specific plan to monetize ORL-101.  Akkadian then shifted gears and, teaming up with the minority shareholders, took steps to displace the Board and the Debtors' other fiduciaries.  Specifically, Akkadian suggested that the Proposed New Directors should be elected to the Board and, through a Recapitalization Proposal, dated March 7,

DocuSign Envelope ID: 10570D7D-E77A-41B4-9777-80E42CA3936D

2023 (the "**Recapitalization Proposal**"), Akkadian asserted it could avoid a bankruptcy filing. This was all reflected in an offer made to the Receiver that Akkadian then forwarded to the Board.

73.     The Recapitalization Proposal was woefully inadequate to address creditor claims and failed to provide adequate funding for ORL-101.  The Recapitalization Proposal entailed an equity capital raise of $1 million to $1.5 million.  This capital raise constituted only a fraction of the $7.8 million required to fund ORL-101.  Moreover, the Debtors' liquidated and unliquidated liabilities exceed well over $11 million in the aggregate, which calculation does not include contingent, unliquidated, and disputed litigation claims, which are potentially range in the tens of millions dollars.  Thus, even when combined with the Debtors' existing cash balances, the proposed equity raise under the Recapitalization Proposal had no chance of staving off a bankruptcy filing.

74.     Over the course of the next three months, the Recapitalization Proposal went through several different iterations, but the amount of proposed new funds—$1 million to $1.5 million—remained unchanged.  Thus, the changes were not meaningful.

75.     Frustrated by the Board's rejection of the proposal, on March 29, 2023, the Requesting Shareholders, acting by power of attorney granted to Mangeat Attorneys-at-Law LLC and Mr. Joël Chevallaz, sent a letter (the "**Requesting Shareholders Letter**") to the Board to request an extraordinary general meeting of shareholders (the "**EGM**") to be held to appoint the Proposed New Directors and, transparently, to (i) enable Akkadian to outvote the independent directors, (ii) take control of the Debtors, and (iii) approve the woefully deficient Recapitalization Proposal.

76.     On April 12, 2023, the Debtors and their advisors again re-engaged with Akkadian to explain the deficiencies of the Recapitalization Proposal in addressing the Debtors' financial

Active\600227957.8

distress. The Debtors presented to Akkadian and its advisors and provided a detailed review of the Debtors' liquidity, liabilities (including discussion of litigation claims) and results of the asset marketing and sale process to date. The presentation laid out plainly that the Debtors' liquidity resources, including proceeds from sales or liquidation of assets, were not sufficient to cover the Debtors' liabilities, let alone fund the development of ORL-101. In that vein, the presentation demonstrated that the proposed $1-$1.5 million capital raise would not change the Company's liquidity or solvency issues in a material way. The presentation then outlined the Company's plan to fund ORL-101 and maximize potential recoveries to creditors and equity through a subchapter V bankruptcy process.

77.    From April 19, 2023 to May 5, 2023, the Debtors' Swiss counsel, Vischer AG, and the Mangeat firm exchanged correspondence to further clarify the Recapitalization Proposal. However, these refinements did not fix the fundamental flaws of the proposal.

78.    On May 9, 2023, the Debtors commenced these subchapter V cases following extensive deliberations by the Board in considering a number of potential alternatives. The Board selected the subchapter V Plan alternative as the best option based upon a sound exercise of its fiduciary duties and business judgment that the proposed Plan provided the best available alternative to maximize value for all stakeholders.

79.    On May 12, 2023, the Board sent out an invitation to the EGM setting forth the terms of the Recapitalization Proposal and the Board's detailed reasons why it should not be approved. A copy of the Invitation to the EGM is attached to this Complaint as **Exhibit A**.

80.    The Debtors understand that Akkadian and the Minority Shareholders are now focused on an alternative strategy to use their scant funds to buy the Shkreli Shares from the Receiver, conditioned on the election of the Proposed New Directors to outvote the independent

18

directors, dismiss these subchapter V cases, and take control of the Debtors' assets. To that end, on May 25, 2023, the Receiver submitted a letter to the District Court requesting approval of the sale of the Shkreli Shares (the "**Stock Sale Application**"). The stated purpose of this request was to permit the Receiver to sell the Shkreli Shares to Akkadian.

81.     The Stock Sale Application attached an Amended and Restated Stock Purchase Agreement, dated May 23, 2023 (the "**Share Purchase Agreement**"), to his submission. In summary, the Receiver has proposed to sell the Shkreli Shares, together with any proxy rights, for $1 million plus an additional 20% of future dividends or distributions on account of those shares for 10 years. *See* Share Purch. Agmt., § 1(a) & (b). The purchase price under the Share Purchase Agreement, specifically allocated 20% for the Preferred Shares and 80% for the ordinary shares. *Id*., § 1(g).

82.     The sale has conditions, however: Akkadian can rescind the transaction if (a) the Board does not approve the transfer of shares to Buyer under the Articles of Incorporation within three months, unless the Akkadian Directors compose a majority of the Board; (b) Phoenixus does not hold a shareholders' meeting within two months of the District Court approving the Share Purchase Agreement; (c) the directors required by Akkadian—who are the same as the Requesting Shareholders' Proposed New Directors—are not appointed to the Board within two months of the District Court approving the Share Purchase Agreement; (d) the District Court enters an order denying approval of the Share Purchase Agreement; (e) Phoenixus exercises its right to purchase the Shkreli Shares as permitted by the Articles of Association; or (f) these *subchapter V cases are not dismissed or withdrawn by May 23, 2024*, unless the Akkadian proposed directors are the majority of the Board, and Phoenixus does not make all best efforts though bankruptcy counsel to have the bankruptcy cases withdrawn or dismissed. *Id*., § 2(c) (emphasis added).

19

83.     In response to the Stock Sale Application, Phoenixus and Mr. Shkreli each submitted letters to the District Court requesting that the Court defer consideration of the Share Purchase Agreement for 21 days.  *See* Koestler D.I. 244 & 247.  The Receiver subsequently filed a reply in opposition to these extension requests.

84.     The District Court denied approval of the Share Purchase Agreement, but granted the Receiver leave to refile its application by June 2, 2023.  *See* Koestler D.I. 251.  The District Court's order provided that if the Receiver files a renewed application, any objections must be filed by June 16, 2023, and the Receiver will be entitled to file a reply by June 23, 2023.

85.     On June 1, 2023, Phoenixus adjourned the EGM to June 29, 2023, to permit both the District Court and this Court to consider the matters presented to them relating to Akkadian's and the Minority Shareholders' attempt to take control of the Debtors and dismiss these subchapter V cases.

86.     The next day, the Requesting Shareholders withdrew the Recapitalization Proposal, leaving their only proposed agenda item to have the Proposed New Directors added to the Board to outvote the independent directors and dismiss these subchapter V cases.

87.     On June 2, 2023, the Receiver filed a second letter with the District Court seeking approval again of the Share Purchase Agreement.  The Debtors intend to oppose that request.

88.     The proposed addition of the four Proposed New Directors to the Board is troublesome—the proposal is transparently designed to pursue Akkadian's agenda, which, thus far, has not been adequately articulated and does not consider the estates' obligations to creditors. To wit, Akkadian (i) first indicated an interest to buy ORL-101, (ii) then indicated it was not interested in pursuing a transaction in ORL-101, (iii) then offered to buy ORL-101 for a nominal upfront payment without any development plan or financing, (iv) then proposed the

DocuSign Envelope ID: 10570D7D-57A-41B4-9F77-80F42C6A3936D

Recapitalization Plan for Phoenixus, the key economic terms of which were changed several times before finally being withdrawn altogether, and (v) then finally proposed a recapitalization plan for Phoenixus before finally withdrawing the recapitalization plan altogether.  In short, Akkadian has yet to articulate any sensible approach to these subchapter V cases and seem instead to be pursuing a strategy to end run the Debtors' processes and this Court's oversight of these subchapter V cases.

89.    The Debtors presently have cash on hand of almost $10 million and have proposed the Plan to give parties in interest a chance to be heard with respect to that Plan.  This path should continue.  This Complaint seeks injunctive relief to give the Debtors the chance to prosecute its Plan.

### COUNT ONE:

### DECLARATION THAT THE EXCLUSIVE REMEDY TO REPLACE A DEBTOR IN POSSESSION IN A SMALL BUSINESS CASE IS REMOVAL UNDER SECTION 1185 OF THE BANKRUPTCY CODE

90.    The Debtors incorporate and restate paragraphs 1 to 89 of this Complaint into this paragraph.

91.    The Debtors' bankruptcy cases are currently pending under subchapter V of title 11, including the cases of Phoenixus AG, which wholly owns the other Debtors, Vyera Pharmaceuticals, LLC; Oakrum Pharma, LLC; SevenScore Pharmaceuticals, LLC; Dermelix Biotherapeutics, LLC; and Orpha Labs AG.

92.    The current Board is composed of three independent individuals, each of whom are experienced professionals with fiduciary duties.  Serving in that capacity, the Board appointed Lawrence Perkins to serve as the Debtors' Chief Restructuring Officer.  Mr. Allison is the managing member or sole member of the board of each of the U.S. subsidiary Debtors.  Mr. Pitts is the sole member of the board of Orpha Labs AG.  Neither any member of the Board nor

Active\600227957.8

Mr. Perkins have an equity investment in any of the Debtors and each of them is an independent and competent fiduciary, qualified to oversee these subchapter V cases.

93.    There is a valid dispute over whether the Board should remain in place as constituted.  The Requesting Shareholders have sought the addition of the Proposed New Directors to the Board, putting the current three Board members, in place as of the Petition Date, in a minority position, or, if they are not re-elected at the next shareholders meeting, displacing them altogether to allow the Proposed New Directors to pursue their agenda.

94.    Subchapter V of the Bankruptcy Code creates a modified version of chapter 11 that eliminates certain provisions that are standard in larger business cases; namely, only a debtor may file a plan and the provisions related to exclusivity do not apply, there are no committees appointed, a special officer, the Subchapter V Trustee is appointed to, among other things, facilitate a consensual plan proposal, and the disclosure statement requirements do not apply.

95.    Subchapter V also has its own definition of "debtor" and "debtor in possession."

96.    Subchapter V defines "debtor" to mean, "a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor."

97.    Subchapter V defines "debtor in possession" to mean, "the debtor, unless removed as debtor in possession under section 1185(a) of this title."

DocuSign Envelope ID: 10570D7D-57A-41B4-9777-80F426A2936D

98.     Subchapter V expressly provides that the Bankruptcy Code's provision regarding appointment of a trustee, section 1104 of the Bankruptcy Code, does not apply in a small business case. *See* 11 U.S.C. § 1181(a).

99.     Section 1185(a) provides that "[o]n request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case, or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter."

100.    If the debtor in possession is removed in a subchapter V case, then the Subchapter V Trustee's duties are expanded to enable the Subchapter V Trustee to perform the duties of the debtor in possession under section 1183(c)(1) of the Bankruptcy Code.

101.    Once a debtor files a bankruptcy case and elects treatment under subchapter V of the Bankruptcy Code, the bankruptcy court is the one to make the determination of whether the debtor remains a debtor in possession or not; and if not, then the remedy available is to expend the role of the Subchapter V Trustee to act as the fiduciary. *See In re ComedyMX, LLC*, 647 B.R. 457, 465 (Bankr. D. Del. 2022) ("Subchapter V also provides a specific means to fill the void when a debtor is dispossessed. Section 1183(b)(5) states that the subchapter V trustee shall, 'if the debtor ceases to be a debtor in possession . . . be authorized to operate the business of the debtor.'").

102.    The Court should enter a declaratory judgment that, notwithstanding any vote at any meeting of Phoenixus that the "debtor in possession," represented by the Board, Mr. Perkins, and Mr. Allision, may not be altered absent further order of this Court under 11 U.S.C. § 1185(a).

Active\600227957.8

DocuSign Envelope ID: 10570D7D-57A-41B4-9777-80F426A3936D

**COUNT TWO:**

**PRELIMINARY INJUNCTIVE RELIEF UNDER**
**SUBCHAPTER V OF CHAPTER 11 OF THE BANKRUPTCY CODE**

103.    The Debtors incorporate and restate paragraphs 1 to 102 of this Complaint into this paragraph.

104.    Phoenixus has scheduled an EGM and an Annual General Meeting for its shareholders for June 29, 2023, which includes the proposal to elect the four Proposed New Directors, including two partners of Akkadian.

105.    The Requesting Shareholders' Proposed New Directors are the same as demanded by Akkadian in the Stock Purchase Agreement, which also then requires dismissal of these subchapter V cases.  This constitutes a clear abuse of their voting rights.

106.    The purpose of the Receiver's actions is to create a recovery for Dr. Koestler.  But Dr. Koestler is not a creditor in these subchapter V cases, and his interests are not relevant to these subchapter V cases and this proceeding.

107.    The only remedy to replace a debtor in debtor in possession in a Subchapter V case is a motion by a party in interest under 11 U.S.C. § 1185.

108.    Unless restrained and enjoined by this Court, the Defendants will continue to seek to exercise control over Phoenixus to prohibit this Court's consideration of the Plan and the restructuring contemplated thereunder, instead dismissing these subchapter V cases.

109.    The Defendants' actions will result in irreparable loss, injury and damage to the Debtors and the creditors as it will, and has already, increase the expenses of these subchapter V cases, result in more litigation, and commence a creditors' race to various courthouses to reduce their claims to judgment.  The costs and expenses the creditors will incur will be detrimental to

Active\600227957.8

them and the Debtors, as, in many instances, the creditors will add any additional enforcement amounts to their respective claims against the Debtors.

110.    Additionally, if the Board is displaced and these subchapter V cases are dismissed, there is $10 million in cash that could be diverted or used for purposes other than paying creditors or funding the development of ORL-101, the use or division of which would irreparably damage the Debtors and their creditors.

111.    The issuance of a preliminary injunction in this case will not cause undue loss or inconvenience to the Defendants.  The Debtors approach to these subchapter V cases has been to obtain confirmation of the Plan as quickly as possible to maximize the Debtors' assets in a way that pays claims in accordance with the priority system in the Bankruptcy Code, without impairing the Requesting Shareholders' distribution and priority rights.  Additionally, Akkadian is not a party in interest in these subchapter V cases and any impact an injunction would have on them is not relevant harm for this Court to consider.

112.    By this Complaint, the Debtors seek to preliminarily enjoin any change to the debtor in possession, whether it be to the Board, the appointment of the Chief Restructuring Officer, or any attempt to change the managing member or board of directors of any of the Debtor subsidiaries, irrespective of whether shareholders vote to add the Proposed New Directors or not, which, as set forth in the following counts, should also be enjoined.

## COUNT THREE:

### DECLARATION THAT THE REQUESTING SHAREHOLDERS AND AKKADIAN HAVE VIOLATED SECTION 362(A) OF THE BANKRUPTCY CODE BY SEEKING TO EXERCISE CONTROL OVER THE DEBTORS

113.    The Debtors incorporate and restate paragraphs 1 to 112 of this Complaint into this paragraph.

114.    Section 362(a)(3) of the Bankruptcy Code provides that the Debtors' filing of petitions under section 301 of the Bankruptcy Code operates as "a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or property from the estate . . . ."

115.    After the Petition Date, the Requesting Shareholders have sought to exercise control over Phoenixus's assets by replacing the Board with the Proposed New Directors for the purpose of dismissing these subchapter V cases and undermining the proposed restructuring set forth in the Plan.  This is a clear abuse of the Requesting Shareholders' voting rights.

116.    The Proposed New Directors are identical to the ones in Akkadian's Stock Purchase Agreement.

117.    Akkadian has worked with the Requesting Shareholders to exercise control over the Debtors and their assets in these subchapter V cases.

118.    Accordingly, the Requesting Shareholders and Akkadian are in violation of the automatic stay provisions of section 362 of the Bankruptcy Code, and the Court should enter an order (a) declaring that the Requesting Shareholders and Akkadian violated the automatic stay, (b) declaring that any and all actions taken by Requesting Shareholders and Akkadian in violation of the automatic stay provisions of section 362 of the Bankruptcy Code are null and void *ab initio*, and (c) to the extent applicable, directing the Requesting Shareholders and Akkadian immediately to take all actions necessary to restore the parties to their relative positions as they existed on the Petition Date.

## COUNT FOUR:

### PRELIMINARY INJUNCTIVE RELIEF UNDER
### SECTION 362(A) OF THE BANKRUPTCY CODE

119.    The Debtors incorporate and restate paragraphs 1 to 118 of this Complaint into this paragraph.

120.    Section 362(a)(3) of the Bankruptcy Code provides that the Debtors' filing of petitions under section 301 of the Bankruptcy Code operates as "a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or property from the estate …."

121.    Phoenixus is a holding company that is the sole owner of each of the Debtors.  The principal value of Phoenixus is its ownership of the subsidiary Debtors.

122.    The Requesting Shareholders' proposal to add the Proposed New Directors to the Board and Akkadian's proposed purchase from the Receiver are designed to enable Akkadian and the Requesting Shareholders, understood to be controlled by Mr. Tilles, to exercise control over the Debtors' estates and their assets, and to allow Akkadian and the Requesting Shareholders to dismiss these subchapter V cases for Akkadian's and the Requesting Shareholders' perceived benefit.  These actions are a clear abuse of the rights afforded shareholders of Phoenixus.

123.    Unless restrained and enjoined by this Court, the Defendants will continue to take actions to take control of the Board and the Debtors so they can abandon the Plan and dismiss these cases.

124.    This action will result in irreparable loss, injury, and damage to the Debtors and the creditors as it will, and has already, increase the expenses of these subchapter V cases, result in more litigation, and commence a creditors' race to various courthouses to reduce their claims to judgment.  The costs and expenses the creditors will incur will be detrimental to them and the Debtors, as, in many instances, the creditors will likely add any additional enforcement amounts to their claims.

125.    The issuance of a preliminary injunction in this case will not cause undue loss or inconvenience to Defendants, because the Debtors approach to these cases has been to obtain confirmation of the Plan as quickly as possible so that the Debtors' assets can be maximized in a

way that pays claims in accordance with the priority system in the Bankruptcy Code, without impairing the Requesting Shareholders' distribution and priority rights.  Additionally, Akkadian is not a party in interest in these cases and any impact an injunction would have on them is not relevant harm for this Court to consider.

126.    The Court should enjoin the Requesting Shareholders' and Akkadian from taking any action in violation of the automatic stay.

**COUNT FIVE:**

**PRELIMINARY INJUNCTIVE RELIEF UNDER SECTION 105 OF THE BANKRUPTCY CODE**

127.    The Debtors incorporate and restate paragraphs 1 to 126 of this Complaint into this paragraph.

128.    Section 105(a) of the Bankruptcy Code gives the Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

129.    The provisions of Subchapter V of the Bankruptcy Code provide that only the Debtors may file a plan.  The Court shall confirm a plan if it meets the requirements of section 1191 of the Bankruptcy Code.

130.    The Debtors have already proposed a Plan.

131.    Unless restrained and enjoined by the Court, the Requesting Shareholders and Akkadian will alter the composition of the Board, enabling them to cause the Board to dismiss these subchapter V cases and, accordingly, prevent confirmation of the Plan.  This is a clear abuse of the Requesting Shareholders' voting rights, all to the detriment of the Debtors and their creditors.

DocuSign Envelope ID: 10570D7D-57A-41B4-9777-80F12GA3936D

132.    Unless restrained and enjoined by this Court, Defendants will continue to seek to exercise control over the Debtors and to dismiss these subchapter V cases.

133.    This action will result in irreparable loss, injury, and damage to the Debtors and their creditors as it will, and has already, increase the expenses of these subchapter V cases, result in more litigation, and commence a creditors' race to various courthouses to reduce their claims to judgment. The costs and expenses the creditors will incur will be detrimental to them and the Debtors, as, in many instances, the creditors will likely add any additional enforcement amounts to their claims.

134.    The issuance of a preliminary injunction in this case will not cause undue loss or inconvenience to Defendants, because the Debtors approach to these cases has been to obtain confirmation of the Plan as quickly as possible so that the Debtors' assets can be maximized in a way that pays claims in accordance with the priority system in the Bankruptcy Code, without impairing the Requesting Shareholders' rights.  Additionally, Akkadian is not a party in interest in these cases and any impact an injunction would have on them is not relevant harm for this Court to consider.

135.    The Court should enjoin the Requesting Shareholders' and Akkadian from taking any action that would result in dismissal of these subchapter V cases for at least 120 days to permit the current Plan filed by the Debtors to be considered by the Court.

[*Remainder of Page Intentionally Left Blank*]

Active\600227957.8

**WHEREFORE**, Phoenixus respectfully requests that the Court enter the following relief:

A.      Preliminarily enjoin any replacement of the debtors in possession or alteration of its Board or management, including Lawrence Perkins in his capacity as Chief Restructuring Officer and Thomas Allison as managing member or sole board member of any of the subsidiary US Debtors, and Derek Pitts as sole director of Orpha Labs AG, without further order of this Court;

B.      Preliminarily enjoin the Requesting Shareholders and Akkadian from taking any action that would result in their exercising of control over the Debtors, including, but not limited to, altering the Board in place as of the Petition Date, without further order of this Court; and

C.      Enjoin the Requesting Shareholders and Akkadian and any affiliate thereof, including any of the Proposed New Directors, from taking any action that would dismiss these subchapter V cases other than filing proper motions under and in accordance with the Bankruptcy Code.

Dated:  June 15, 2023                          Respectfully submitted,
        Wilmington, Delaware

                                               **DLA PIPER LLP (US)**

                                               */s/ R. Craig Martin*
                                               R. Craig Martin (DE No. 5032)
                                               Matthew S. Sarna (DE No. 6578)
                                               1201 North Market Street
                                               Wilmington, Delaware 19801
                                               Tel: (302) 468-5700
                                               Fax: (302) 397-2336
                                               Email: craig.martin@us.dlapiper.com
                                                        matthew.sarna@us.dlapiper.com

                                               -and-

                                               John K. Lyons (admitted *pro hac vice*)
                                               444 West Lake Street, Suite 900
                                               Chicago, Illinois 60606-0089
                                               Tel: (312) 368-4000
                                               Fax: (312) 236-7516
                                               Email: john.lyons@us.dlapiper.com

                                               *Counsel to the Debtors*

## VERIFICATION

I, Thomas J. Allison, hereby declare and verify under penalty of perjury as follows:

1.      I am the chairman of the board of directors of Phoenixus AG and am also the sole manager of Vyera Pharmaceuticals, LLC, Oakrum Pharma, LLC, SevenScore Pharmaceuticals, LLC, and Dermelix Biotherapeutics, LLC, and I am authorized to execute this verification on behalf of Plaintiff Phoenixus AG.

2.      I have read the foregoing complaint, and I believe, based on reasonable inquiry, that the facts contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on the 15th day of June 2023.

DocuSigned by:

A271D5AF6C14495...

Thomas J. Allison