# N THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VYERA PHARMACEUTICALS, LLC., *et al.*,<br><br>Debtors.[1] | Chapter 11, Subchapter V<br><br>Case No. 23-10605 (JKS)<br><br>(Jointly Administered) |
| PHOENIXUS AG,<br><br>Plaintiff,<br><br>v.<br><br>AKKADIAN PARTNERS FUND;<br>AKKADIAN PARTNERS FUND –<br>COMPARTMENT PHOENIXUS<br>INVESTMENT; HARLEY LIPPMAN;<br>OPALEYE LP; ANDREW PIZZO;<br>WORMWOOD CAPITAL LLC; RON TILLES;<br>ANTOINE VERGLAS; THORNEY OMEGA<br>PTY LTD; and SABINE GRITTI,<br><br>Defendants. | Adv. Pro. No. 23-50406 (JKS)<br><br>**Re: Adv. Docket Nos. 3, 5** |

**RESPONSE OF HARLEY LIPPMAN, ANDREW PIZZO, WORMWOOD CAPITAL LLC, RON TILLES, AND ANTOINE VERGLAS TO DEBTORS' MOTION FOR PRELIMINARY INJUNCTION**

1.  Each of Harley Lippman, Andrew Pizzo, Wormwood Capital LLC, Ron Tilles, and Antoine Verglas (together, "**Subject Defendants**"), by and through their counsel Blank Rome LLP, submit this response to the Debtors' Motion for Preliminary Injunction (the "**Motion**"). Because the Subject Defendants received effectively no notice of the Motion,[2] the Subject

---

[1] The Debtors in these subchapter V cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are as follows: Vyera Pharmaceuticals, LLC (1758); Oakrum Pharma, LLC (3999); SevenScore Pharmaceuticals, LLC (2598); Phoenixus AG (1091); Dermelix Biotherapeutics, LLC (4711); and Orpha Labs AG. The Debtors' headquarters and the mailing address for the Debtors is 600 3rd Avenue, 19th Floor, New York, NY 10016.

[2] Upon information, Phoenixus' Complaint for Injunctive Relief, the Motion, and supporting papers were served on Subject Defendants in a period beginning the late morning of June 21, 2023 through the afternoon of June 22, 2023.

1

Defendants adopt the arguments submitted in opposition by the Akkadian parties ("**Akkadian**") and submit this response only to address a single issue; namely—Debtors have provided no properly specific basis as to why the Subject Defendants should be restrained from exercising their rights, as minority shareholders of Debtor Phoenixus AG ("**Phoenixus**"), to vote in whatever manner they choose at the Extraordinary General Meeting ("**EGM**") scheduled *by Phoenixus itself* to take place on June 29, 2023. Thus, the Subject Defendants request that this portion of Debtors' motion should be denied.

2. Central to the Motion is Debtors' contention that convening the EGM was part of "Ron Tilles and Akkadian['s] … strategy to dismiss these subchapter V cases." Mot. at 9. But when the facts are examined, this contention collapses. The impetus for convening an EGM did not involve Akkadian at all: it was an independent, *pre-petition* initiative of a group of minority shareholders (including the Subject Defendants), which sent a letter to Phoenixus on March 29, 2023 requesting that an EGM be held. Mot. ¶48. Debtors concede that the minority shareholders were acting entirely within their rights in doing this. They admit that under Swiss law, shareholders may request an EGM, and when such a request was made here, Swiss law required Phoenixus' Board of Directors to schedule such a meeting. Compl. ¶5.

3. But although the written request was delivered to Phoenixus' headquarters in Switzerland on March 29, as far as the minority shareholders are concerned, it was met by silence. The Board did not respond to the shareholders directly, and, despite being required by Swiss law to schedule the requested meeting, gave no indication of when (and even whether) it would do so.

4. On May 9, 2023, Debtors commenced these subchapter V cases. Mot. ¶51. Three days later, on May 12, 2023, the Board sent out an invitation to an EGM to take place on June 2, 2023. Mot. ¶52. On June 1, 2023, however, Debtors adjourned the EGM until June 29, 2023. Mot.

¶58. Thus, contrary to Debtors' contention that the convening of the EGM was part of a collusive "strategy to dismiss these subchapter V cases," Mot. at 9, the request by the minority shareholders (but not Akkadian) for a meeting preceded the bankruptcy filing by about six weeks. It was *Debtors* that delayed in scheduling it until after the bankruptcy filing.

5. Let us be clear as to what Debtors are asking the Court to do here. First, they are requesting that the Court enjoin a shareholder meeting *that was scheduled by Debtor, Phoenixus itself* and that the Debtors acknowledge Phoenixus was required to schedule under Swiss law. Put another way, the Debtors want this Court to provide cover for Phoenixus' proposed breach of its obligations in Switzerland. But perhaps even worse, they also want the Court to dispense with the narrow tailoring that is required in any motion seeking extraordinary relief and issue a broad order, that even if the EGM *is* allowed to go forward, the Subject Defendants are forbidden from exercising their right to vote at that meeting.

6. Debtors cite no case law that would permit this Court to issue such an extraordinary injunction with respect to the Subject Defendants in these circumstances. The few cases that they do cite, *e.g., In re SS Body Armor I, Inc.*, 527 B.R. 597, 607 (Bankr. D. Del. 2015); *In re GennCan Glob. USA*, 619 B.R. 364, 369 (Bankr. E.D. Ky. 2020), involve "clear abuse" of reorganization process by "out of the money" shareholders and there is nothing alleged by Debtors in this subchapter V case that comes anywhere close to satisfying the clear abuse standard as to the Subject Defendants (among other things, this is a case where the Debtors appear to have asserted non-contingent, liquidated liability solvency and the prospect that equity may be in the money).

7. A critical distinction between the facts here and the situations in leading, relevant cases like *Manville*, *Marvel*, and *SS Body Armor* is that here the requirement to convene shareholders' meeting ripened under Swiss law weeks before the Debtors' case commenced based

upon legitimate shareholder concerns regarding the enterprise, whereas *Manville*, *Marvel*, and *SS Body Armor* all involved postpetition actions by shareholders. In *Manville*, for example, an equity committee appointed by the court in that historically, complex, multi-year chapter 11 bankruptcy case, where then novel remedies were implemented to manage a mass tort exposure —displeased with being cut out of negotiations for a plan—brought a postpetition action in Delaware state court seeking to compel debtor to hold a shareholder meeting under Delaware General Corporation Law. *Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 63 (2d Cir. 1986). While this effort to hold a meeting was ultimately enjoined by the bankruptcy court after initial reversal of an injunction by the Second Circuit (*see In re Johns Manville,* 66 B.R. 517, 541 (Bankr. S.D.N.Y. 1986)), it is notable that the Second Circuit ruled that there was no equation between equity's post-petition agenda to accomplish directorial replacement to enhance negotiating leverage and the necessary demonstration of either "clear abuse" or "irreparable harm" in respect of reorganization. *Manville Corp.*, 801 F.2d at 65.

8. In *Marvel*, a bondholder committee formed in the bankruptcy case—which obtained stay relief to foreclose on pledged shares—notified the debtors postpetition of its intent to vote the pledged shares to replace Marvel's board of directors. The Delaware District Court ruled that the bondholders' right to vote those shares could not be stayed, stating the generally applicable principle that governs this case: "[i]t is well settled that the right of shareholders to compel a shareholders meeting for the purpose of electing a new board subsists during reorganization proceedings." *In re Marvel Entertainment Group*, 209 B.R. 832, 838 (D. Del. 1997). In *SS Body Armor*, the debtor did not hold an annual shareholder meeting for over four years, even though its bylaws required annual meetings. Postpetition, an owner of common stock issued a demand that a shareholder meeting be held and sought stay relief from the court to permit

the meeting. *In re SS Body Armor I, Inc.*, 527 B.R. 597, 601-02 (Bankr. D. Del. 2015). The debtor opposed stay relief on the grounds that the meeting would disrupt reorganization, but the court found that the right to the meeting subsisted, was not stayed, but remained subject to the "clear abuse" standard. *Id.*

9. Here, the shareholder meeting is the result of a Swiss governance process that was triggered before the Debtors filed their voluntary petitions. There was no postpetition action by the Subject Defendants that "demonstrates a willingness to risk rehabilitation altogether in order to win a larger share for equity." *Manville*, 801 F.2d at 65; *Marvel*, 209 B.R. at 838. The Subject Defendants, minority shareholders, wish to participate in the EGM to understand the Debtors' expensive plan, using limited, but not insignificant cash resources, to invest in a single drug in the Debtors' inventory of assets. In a subchapter V case, where there are limited opportunities for collective action or scrutiny by holders and less disclosure required by the Debtors in respect of their pending plan than in a chapter 11 generally, the right of shareholders to be heard on governance matters becomes particularly important to the integrity of the chapter 11 collective remedy. Seeking information and even negotiating leverage in reorganization is not clear abuse.

10. Debtors' Motion is also grounded on the contention that Akkadian, having offered to acquire Martin Shkreli's former shares in Phoenixus from the Receiver, intends to use its controlling interest to oust the current Board of Directors and control their replacements in a way that would harm the interests of the Debtor and its creditors. *See generally*, Mot. ¶¶ 41-61. But even if this contention has merit, the facts as alleged cannot justify an injunction against the Subject Defendants (or any of the minority shareholders identified as Defendants in this proceeding). Upon information, each Subject Defendant has no interest in Akkadian, nor do Debtors allege otherwise. No Subject Defendant will control the former Shkreli shares—again, that is Akkadian's position.

Mot. ¶¶ 7, 53-55. Moreover, despite the insinuation running through the Motion that the Subject Defendants and others are colluding with Akkadian to the detriment of Phoenixus (*see, e.g.*, Mot. ¶53 (alleging that "Debtors understand that Akkadian and the Minority Shareholders are now focused on an alternative strategy to use their scant funds to buy the Shkreli shares")), they allege no specific facts that would support a claim of collusion. No Subject Defendant has the power either to choose a Board of Directors or to control them after they have been elected.[3]

11.    Finally, as noted, upon information, the Motion and pleadings were served on the various Subject Defendants starting in the late morning on June 21, 2023, and no Subject Defendant has had an opportunity to review them in detail. Accordingly, the Subject Defendants deny each and every factual allegation in the various papers in their entirety and hold the Debtors to their proofs. If filing an Answer should be required, the Subject Defendants reserve the right to address specific factual allegations at that time.

*[Remainder of page intentionally left blank]*

---

[3] Indeed, Debtors concede that all of the so-called "Requesting Shareholders" combined hold only 13.5% of the total shares. Mot. ¶6.

Dated: June 23, 2023
      Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Lawrence R. Thomas III*
Lawrence R. Thomas III (DE No. 6935)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:   (302) 425-6400
Facsimile:    (302) 425-6464
E-mail:       lorenzo.thomas@blankrome.com

-AND-

**BLANK ROME LLP**
Michael B. Schaedle (*pro hac vice* pending)
Eamon O'Kelly (*pro hac vice* pending)
1271 Avenue of the Americas
New York, New York 10020
Telephone:   (212) 885-5000
Facsimile:    (212) 885-5001
E-mail:       mike.schaedle@blankrome.com
                 eamon.okelly@blankrome.com

*Counsel to Harley Lippman, Andrew Pizzo, Wormwood Capital LLC, Ron Tilles, and Antoine Verglas*